**\*\* E-filed on 11/18/05 \*\***

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RICHARD LYTEL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JANET SIMPSON,<br><br>　　　　　　Defendant.<br><br>AND RELATED CROSS-ACTION | Case Number 05-01937-JF<br><br>ORDER[1] GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES<br><br>[Docket No. 64] |

　　　Defendant Janet Simpson ("Simpson") moves, pursuant to California Civil Procedure Code § 425.16(c) and Civil Local Rule 7-2, for recovery of attorneys' fees and costs incurred in defending against certain claims brought by Plaintiff Richard Lytel ("Lytel"). Lytel opposes the motion. Having considered the briefs, the applicable law, and the arguments of counsel at the hearing on November 10, 2005, the Court will grant the motion in part, for the reasons set forth below.

---

[1] This disposition is not designated for publication and may not be cited.

## I. BACKGROUND

In or about August 2003, Lytel was employed by Sun Microsystems, Inc. ("Sun") as Vice President of the Advanced System Development ("ASD") Center located in Menlo Park, California. Lytel had principal responsibility for three research and development projects, one of which was the Life Sciences project. After Lytel received approval to expand the Life Sciences project, Lytel and Simpson discussed an opportunity for Simpson to work on the project. At the time, Simpson was a Sun employee working in Dallas, Texas, having been hired in or about December 2000 as a Strategic Sales Development Representative. Simpson transferred to the Life Sciences project in September 2003, with the understanding that she would continue to work out of the Sun offices in Dallas and travel as needed to the company offices in Menlo Park and the lab facilities in San Diego. In this new capacity, Simpson worked under the direct supervision of Lytel.

Simpson alleges that while working under Lytel's supervision she was the victim of sexual harassment. As a result, Simpson reported Lytel's alleged harassment to Sun's Human Resources Department ("HRD") on at least one occasion.[2] The parties dispute the substance of the allegations made by Simpson to HRD. Lytel claims that Simpson told HRD that Lytel violated Sun's confidentiality policy, was involved in a conflict of interest, and engaged in sexual harassment. According to Lytel, the sexual harassment claim included allegations that he had kissed Simpson on the head, hugged Simpson, sent Simpson personal e-mails and flowers, and provided Simpson with a short story containing sexual content that Lytel had written for a short fiction class. Simpson contends that she reported numerous additional examples of Lytel's sexual harassment to HRD. Answer, ¶ 34.

On August 26, 2004, Lytel was informed that the fictional story he provided to Simpson was grounds for termination and that he no longer would be an employee at Sun. As a result, Lytel elected to resign from his position.

---

[2] The parties dispute the number of times Simpson reported Lytel's alleged harassment to HRD and the dates on which any such reports occurred.

In April 2005, Simpson filed a complaint against Lytel with the California Department of Fair Employment and Housing ("DFEH"), alleging charges of sexual harassment, retaliation and gender based discrimination. On the same date, Simpson filed a complaint with the DFEH against Sun containing substantially similar allegations. The DFEH complaints contain allegations that Lytel promised Simpson a pay raise if she was responsive to his romantic requests, made romantic overtures toward Simpson, repeatedly touched Simpson without her consent, represented to third parties that he was having a romantic relationship with Simpson, and threatened Simpson with demotion, transfer, or termination in retaliation for her communications with HRD. Lytel claims that he did not know of these additional allegations until he received a copy of Simpson's DFEH complaint, wherein Simpson stated that she previously had made these allegations to Sun employees.

Lytel filed the instant action against Simpson on May 10, 2005, alleging defamation, intentional interference with prospective economic advantage and intentional infliction of emotional distress. On June 21, 2005, Simpson filed a counterclaim against Lytel and Sun, alleging ten claims for relief.[3] On July 29, 2005, Simpson moved to strike Lytel's first through fourth claims pursuant to California Civil Procedure Code Section 425.16 ("anti-SLAPP statute"), to the extent that they are based upon statements Simpson made to the DFEH. On September 20, 2005, the Court issued an order granting Simpson's motion to strike, noting Lytel's position that "it is undisputed that any statements made by Simpson to the DFEH are privileged and, as such, they are not the subject of any allegation in the complaint."

Simpson now moves to recover attorneys' fees, arguing that she is entitled to recover "nothing less than *all* reasonable defense fees and costs . . . incurred to defend against the First through Fourth Causes of Action of the Complaint." Motion at 5. Moreover, because the anti-SLAPP motion was granted as to each and every claim contained in the complaint, Simpson maintains that she is entitled to recover the total amount of attorneys' fees incurred to date in

---

[3] Simpson previously filed suit in San Mateo Superior Court against Lytel and Sun on May 23, 2005, alleging the same ten causes of action. This case was voluntarily dismissed.

defense of the instant action — an amount totaling $56,538.00.[4] *Id*. at 6.  Finally, Simpson seeks to recover an additional $8,165.50 in fees that were incurred in bringing the present motion. Reply at 11.

## II. LEGAL STANDARD

Under the California anti-SLAPP statute, "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c) (emphasis added).  Thus, an award of attorney fees to a prevailing defendant on a special motion to strike is mandatory. *See Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 215 (2002) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001)).  However, "[t]he court has broad discretion in determining the reasonable amount of attorney fees and costs to award a prevailing defendant." *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002).

## III. DISCUSSION

Lytel argues that Simpson should not be considered to be a "prevailing party" on the anti-SLAPP motion and that her request for attorneys' fees therefore should be denied.  In support of this argument, Lytel cites *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998), in which the court held that the determination of whether there is a prevailing party depends upon whether the party realized its objectives in the litigation.  Lytel maintains that Simpson's anti-SLAPP motion did not achieve its intended objective because the motion did not result in any claim for relief or language being stricken from the complaint.  The Court disagrees.  The allegations contained in Lytel's complaint were sufficiently ambiguous to warrant Simpson's filing of the anti-SLAPP motion.  Specifically, the complaint states that "plaintiff has made new and different defamatory statements against defendant, both written and verbal, and both to Sun employees *and others*." Complaint, ¶ 37 (emphasis added).  Lytel proceeds to identify the "new and different"

---

[4] As of September 19, 2005, Simpson had accrued a total legal bill of $95,703.50, of which $39,165.50 was for services unrelated to the defense of Plaintiff's lawsuit. Motion at 6. Accordingly, the total amount of fees incurred by Simpson in defense of the instant action amounts to $56,538.00. *Id*.

4

defamatory statements using language substantially similar to the allegations of sexual harassment contained in Simpson's DFEH complaint. *Id*. The ambiguity relating to Simpson's publication of the allegedly defamatory statements, paired with the apparent use of language contained in the DFEH complaint provided Simpson with an adequate basis to file the anti-SLAPP motion.[5] By filing the anti-SLAPP motion, Simpson succeeded in narrowing the scope of the instant action by clarifying that Simpson's communications to the DFEH are not the subject of the complaint's allegations. Accordingly, Simpson is properly deemed to have prevailed on her motion to strike and is entitled to recover attorneys' fees under the anti-SLAPP statute.

Although Simpson is entitled to a mandatory recovery of attorneys' fees and costs under the anti-SLAPP statute, Simpson's request for $56,538.00 is unreasonable under the circumstances. As an initial matter, Simpson is not entitled to recover all attorneys' fees incurred in her defense of Lytel's complaint. The cases cited by Simpson in which the prevailing defendant was granted an award of all defense costs are distinguishable, given that in each case the defendant was successful in either extricating herself from the lawsuit or eliminating one or more claims in their entirety. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628 (1996). Here, Simpson did not achieve such sweeping success. Awarding Simpson all of her defense costs

---

[5] In addition, Simpson claims she was influenced to file the anti-SLAPP motion after reading Mr. Kastner's declaration filed in support of Lytel's motion for early discovery, in which Mr. Kastner stated: "Because [the] DFEH allegations were completely concocted and untrue, Lytel commenced this action for defamation, tortuous interference with prospective economic advantage and intentional infliction of emotional distress." Request for Judicial Notice, Ex. 3, ¶ 8. However, in evaluating Simpson's decision to file the anti-SLAPP motion, the Court declines to make too much of Mr. Kastner's declaration. First, an examination of the billing records presented to the Court by Mr. Ryan reveals that over twenty five hours of work had been performed on anti-SLAPP motion *prior to* the date on which Mr. Kastner's declaration was filed. *See* Ryan Decl., Ex. A. Second, without expressing an opinion on whether communications between Simpson and Sun employees may also be privileged, the Court is mindful of Mr. Kastner's explanation that the DFEH complaint, even if privileged as such, is relevant because it put Lytel on notice that Simpson had engaged in the publication of further allegedly defamatory statements.

5

Case No. C 05-01937-JF
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES
(JFEX1)

would not advance the public policy underlying the anti-SLAPP statute, which was enacted "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).

More importantly, the Court's order granting Simpson's anti-SLAPP motion was merely a confirmation of what had already been conceded by Lytel in the first few pages of his opposition — that any statements made by Simpson to the DFEH are privileged and, as such, properly cannot be the subject of any allegation in the complaint. Indeed, a substantial portion of the ninety hours of work performed by Simpson's attorneys on the anti-SLAPP motion could have been avoided had counsel for both parties elected to discuss the substance of the motion in advance or agreed to take the motion off calendar when it became clear that Lytel did not dispute the privileged nature of Simpson's communications to the DFEH.[6] Accordingly, the Court will limit Simpson's attorneys' fees to $10,000.00.

### IV. ORDER

Simpson's motion to recover attorneys' fees is GRANTED IN PART. Simpson shall be entitled to recover attorneys' fees in the amount of $10,000.00.

DATED: November 17, 2005

       /s/ electronic signature authorized
      JEREMY FOGEL
      United States District Judge

---

[6] Although the Court recognizes that the instant litigation and its underlying events have had a great emotional impact upon the parties, the Court wishes to emphasize the need for counsel to remain professional, and to communicate openly with one another when appropriate.

1  This Order has been served upon the following persons:

3  Counsel for Plaintiff

4  eck@kastnerbanchero.com

5  slh@kastnerbanchero.com

6  fh@kastnerbanchero.com

7  ln@kastnerbanchero.com

8  mbisbee@ropers.com

9  jsimonson@ropers.com

10  pdunn@ropers.com

11  knguyen@ropers.com

14  Counsel for Defendant

15  jfr@olimpia-whelan-lively.com

18  Counsel for Cross-Defendant

19  urosales@wsgr.com

20  ggansle@wsgr.com

21  lreagan@wsgr.com

Case No. C 05-01937-JF
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES
(JFEX1)