**E-Filed 5/8/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD LYTEL,<br><br>            Plaintiff,<br><br>    v.<br><br>JANET SIMPSON,<br><br>            Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case Number C 05-01937 JF<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket no. 183] |

## I. BACKGROUND

In December, 2000, Sun Microsystems, Inc. ("Sun") employed Janet Simpson ("Simpson") as a Strategic Sales Development Representative in Dallas, Texas. Declaration of Richard Lytel ("Lytel Decl."), ¶ 3. In August, 2003, Sun employed Richard Lytel ("Lytel") as Vice President of the Advanced System Development ("ASD") Center in Menlo Park, California. *Id.*, ¶ 2. Lytel was responsible for three research and development projects, one of which was the Life Sciences project. *Id.* After Lytel received approval to expand the Life Sciences project,

---

[1] This disposition is not designated for publication and may not be cited.

1  Lytel and Simpson discussed an opportunity for Simpson to work on the project. *Id.*, ¶¶ 3-5. On
2  September 18, 2003, Simpson transferred to the Life Sciences project with the understanding that
3  she would work under the direct supervision of Lytel but would continue to work out of Sun's
4  offices in Dallas and travel as needed to Sun's offices in Menlo Park and laboratory facilities in
5  San Diego. *Id.*, ¶¶ 5, 8.

6        Simpson alleges that while working under Lytel's supervision she was the victim of
7  sexual harassment. *See* Declaration of Janet Simpson ("Simpson Decl."). Simpson reported
8  Lytel's alleged harassment to Sun's Human Resources Department ("HRD"). Declaration of
9  Jeffrey F. Ryan ("Ryan Decl."), Ex. A at 1. HRD subsequently issued a report finding that Lytel
10  had engaged in inappropriate conduct, including kissing Simpson on the head, hugging her
11  frequently, sending her personal e-mails and flowers, and providing her copies of two short
12  fictional stories written by Lytel that contained explicit sexual content. *Id.*, Ex. A at 1-4. HRD
13  concluded that Lytel's behavior was inappropriate and that disciplinary action should be taken,
14  "up to and including, termination." *Id.*, Ex. A at 9.

15        In April, 2005, Simpson filed a complaint against Lytel with the California Department of
16  Fair Employment and Housing ("DFEH"), alleging sexual harassment, retaliation and gender
17  based discrimination. Counterclaim of Janet Simpson ("Counterclaim"), Ex. B. On the same
18  date, Simpson filed a DFEH complaint against Sun containing substantially similar allegations.
19  *Id.*, Ex. A. The DFEH complaints contain allegations that Lytel promised Simpson a pay raise if
20  she was responsive to his romantic requests, made romantic overtures toward Simpson,
21  repeatedly touched Simpson without her consent, represented to third parties that he was having a
22  romantic relationship with Simpson, and threatened Simpson with demotion, transfer, or
23  termination in retaliation for her communications with HRD. *Id.*, Exs. A and B.

24        On May 10, 2005, Lytel filed the instant federal complaint against Simpson alleging: (1)
25  defamation by libel in violation of California Civil Code § 44 *et seq.*; (2) defamation by libel in
26  violation of California Civil Code § 45 *et seq.*; (3) intentional interference with prospective
27  economic advantage; (4) and intentional infliction of emotional distress. Complaint, ¶¶ 39-60.
28

1  On June 21, 2005, Simpson filed ten counterclaims against Lytel and Sun.[2] Counterclaim, ¶¶ 26-104. Simpson claims: (1) harassment in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq.*, against both defendants; (2) retaliation in violation of FEHA against both defendants; (3) breach of contract against Sun; (4) breach of implied covenant of good faith and fair dealing against Sun; (5) intentional infliction of emotional distress against both defendants; (6) negligent hiring, training, retention, supervision/ unlawful policy, custom or habit against Sun; (7) assault against both defendants; (8) battery against both defendants; (9) sexual battery in violation of California Civil Code § 1708.5 against both defendants; and (10) gender based discrimination in violation of FEHA against Sun. *Id.*

On March 24, 2006, Lytel filed the instant motion for summary judgment, arguing that there is no triable issue of material fact relating to Simpson's six claims against him and that Simpson cannot establish every element of her six claims. Simpson opposes the motion. Having considered the briefs, relevant evidence, and the oral arguments at the hearing on April 28, 2006, the Court will grant in part and deny in part the motion for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ.

---

[2] Simpson previously filed suit in San Mateo Superior Court against Lytel and Sun on May 23, 2005, alleging the same ten causes of action. This case was voluntarily dismissed.

3

P. 56(e); *Celotex Corp.*, 477 U.S. at 324. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Summary judgment is not appropriate if the non- moving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991).

### III.   DISCUSSION

A.     <u>First and Second Claims: Unlawful Harassment and Retaliation in Violation of FEHA</u>

Simpson's first and second claims for relief allege harassment and retaliation under FEHA. Lytel challenges these claims, arguing that Simpson was not subjected to harassment or retaliation.[3]

1.     <u>Harassment</u>

FEHA makes it an unlawful employment practice for an employer, "because of the . . . sex . . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code. § 12940(a). Under FEHA, it is unlawful for an employer, or any other person, to harass an employee based on sex. Cal. Gov. Code § 12940(j)(1). Section 12940(j)(3) explicitly provides that an employee is personally liable for harassment "regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Cal. Gov.

---

[3] In order to pursue a civil cause of action under FEHA, an individual first must follow certain procedural steps set forth in the statute. "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." *Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 492 (Cal. 1996). The DFEH complaint must be filed within one year of the date on which the last alleged unlawful practice occurred. Cal. Gov. Code § 12960(d).

DFEH records indicate that the Department received Simpson's administrative complaint on April 22, 2005, well before the statutory deadline. Counterclaim, Exs. A and B. Lytel does not contest that the date on which the DFEH complaint was received. Accordingly, the Court concludes that Simpson exhausted her administrative remedies and is permitted to pursue a civil action under FEHA against Lytel on her harassment and retaliation claims.

1  Code § 12940(j)(3). "These prohibitions represent a fundamental public policy decision
2  regarding 'the need to protect and safeguard the right and opportunity of all persons to seek and
3  hold employment free from discrimination.'" *Lyle v. Warner Bros. Television Prods.*, No.
4  S125171, 2006 WL 1028558, at *4 (Cal. Apr. 20, 2006) (quoting *Brown v. Super. Ct.*, 37 Cal.3d
5  477, 485 (Cal. 1984)).

6  "[T]he prohibition against sexual harassment includes protection from a broad range of
7  conduct, ranging from expressly or impliedly conditioning employment benefits on submission to
8  or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile
9  or abusive on the basis of sex." *Miller v. Dep't of Corr.*, 36 Cal.4th 446, 461 (Cal. 2005)).
10 "[P]rohibited harassment includes verbal, physical, and visual harassment, as well as unwanted
11 sexual advances." *Lyle*, 2006 WL 1028558, at *7 (citation and quotations omitted). Verbal
12 harassment includes "epithets, derogatory comments," or sexual slurs. *Id.* Physical harassment
13 includes "assault, impeding or blocking movement, or any physical interference with normal
14 work or movement," when directed on the basis of sex. *Id.* Visual harassment includes
15 "derogatory posters, cartoons, or drawings on the basis of sex." *Id.*

16  Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, to prevail on
17 a hostile work environment claim an employee must show that "she was subjected to sexual
18 advances, conduct, or comments that were (1) unwelcome; (2) because of sex; and (3)
19 sufficiently severe or pervasive to alter the conditions of her employment and create an abusive
20 work environment." *Id.* at *6 (citations omitted). California has adopted Title VII's standard for
21 hostile work environment sexual harassment claims under FEHA. *Id.* Thus, to prevail on a
22 claim of hostile work environment sexual harassment, an employee "must demonstrate that the
23 conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of
24 employment and create a work environment that qualifies as hostile or abusive to employees
25 *because of their sex*." *Id.* at *5.

26  In the instant action, Simpson alleges that Lytel created a hostile or abusive work
27 environment. Simpson alleges six incidents of sexual harassment, claiming that Lytel: (1)
28 hugged and kissed her, and touched her breasts; (2) sent her e-mails with inappropriate remarks

and questions concerning her personal life; (3) told others that he was in a romantic relationship with her; (4) sent e-mails to her personal e-mail account without her permission; (5) expressed resentment in response to her attempts to discourage a personal relationship, refusal to travel with him, and refusal to meet with him on occasions not related to business; and (6) suggested that she transfer to a different position within Sun. *See* Simpson Decl., ¶¶ 4-9, 11-13, 15-29, 31, 35-39. The only issue on summary judgment is whether a reasonable jury could find that these alleged incidents were undertaken because of Simpson's sex, and that the conduct was sufficiently severe or pervasive to alter the conditions of Simpson's employment.

This Court concludes that a reasonable jury could find that Simpson was repeatedly subjected to verbal and physical harassment based on her sex. To cite just one piece of evidence, Lytel sent two sexually explicit short stories to Simpson, attached to an e-mail in which Lytel wrote:

> It's 11 pm your time, so I am guessing you are sleeping or enjoying a late movie with a friend or a good book. I know you're not drinking wine -- I had one glass, but that's it. . . . [Our steak dinner] was fun -- especially the Raymond Merlot at the bar and talking with you. . . . Am feeling like we will have to do that again soon, though -- I really enjoy your company.
>
> Which brings me to a thought -- I've noticed this about myself, that I am having a lot more fun in my work since hanging out with you. Why is that? Partly because you challenge me -- you are very smart, and your experience is deep in areas where mine is not. . . . And partly I am happier because you make me feel like I am special. I don't know if you really think I am extra special, but I do know that you believe that all of us -- people -- are special and deserve to be treated well. This makes you extra special, by the way.
>
> . . . .
>
> So do you want to learn more about me? I have a couple of short stories I wrote a few years back. . . .

*Id.*, Ex. D. In the short story entitled "The Angry Young Man," beginning in the second paragraph Lytel writes with profanity and describes a sexually explicit situation. *Id.*, Ex. E. The short story goes on to describe numerous other occasions of sexually explicit situations. *Id*.

In addition Simpson has stated that she received inappropriate hugs from Lytel. *Id.*, ¶ 39. Lytel claims that the hugs were consensual. *See* Lytel Decl., ¶ 44. In an e-mail Lytel inquired about the hugs when he asked, "Hey, you don't mind the hugs, do you? 'Cause I can stop doing

6

so!" *Id.*, Ex. 18. On August 21, 2003, Simpson e-mailed Lytel in response and said, "Are you kidding, I love hugs . . ." *Id.* Simpson argues that the "I love hugs" e-mail is not authentic, claiming that the evidence was manufactured or altered and that she never sent such an e-mail. Simpson's Reply to John Simonson's Declaration at 1-2. While Simpson provides no evidence of this contention, the dispute ultimately is immaterial. Regardless of whether the hugs were consensual or not, there was an incident in May, 2004, when Lytel grabbed Simpson's breasts with no evidence of consent. Declaration of John S. Simonson ("Simonson Decl."), Ex. 1 at 191-92; Supplemental Declaration of John S. Simonson ("Simonson Supp. Decl."), Ex. 8 at 188-89; Simpson Decl., ¶¶ 4, 31.

Considering the evidence, a reasonable jury could find that Simpson was subjected to sexual advances, conduct, or comments because of her sex that were sufficiently severe or pervasive to create a hostile work environment. Accordingly, the Court will deny Lytel's motion for summary judgment on this claim.

2. <u>Retaliation</u>

California Government Code § 12940(h) "forbids employers from retaliating against employees who have acted to protect the rights afforded by" FEHA. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1035 (Cal. 2005). Section 12940(h) provides that it is unlawful "[f]or any employer, . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). Under Section 12940(h) supervisors can be held liable for retaliation. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1288 (9th Cir. 2001).

"The legislative purpose underlying FEHA's prohibition against retaliation is to prevent employers from deterring employees from asserting good faith discrimination complaints, and the use of . . . retaliatory actions may certainly have this effect. *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1455 (Cal. Ct. App. 2002). However, as the *Akers* court opined:

> [T]o be actionable, the retaliation must result in a substantial adverse change in the terms and conditions of the plaintiff's employment. *A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient.*

7

> Requiring an employee to prove a substantial adverse job effect *guards against* both judicial micromanagement of business practices, and *frivolous suits over insignificant slights.* Absent this threshold showing, courts will be thrust into the role of personnel officers, becoming entangled in every conceivable form of employee job dissatisfaction.

95 Cal.App.4th at 1455 (emphasis added) (citation and quotations omitted). The court concluded that, "[w]hile the Legislature was understandably concerned with the chilling effect of employer retaliatory actions and mandated that FEHA provisions be interpreted broadly to prevent unlawful discrimination, *it could not have intended to provide employees a remedy for any possible slight* resulting from the filing of a discrimination complaint. *Id.* at 1455 (emphasis added).

A prima facie case for retaliation requires that the employee show that: "(1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link between the protected activity and the employer's action." *Id.* at 1453. If the employee "establishes a prima facie case [for retaliation], the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Id.* Once the "employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id.*

In California, the "materiality" test is used to define an adverse employment action. *Yanowitz*, 36 Cal.4th at 1036. The materiality test requires an employer's adverse action to affect materially the terms and conditions of employment. *Id.* The materiality test protects the employee against not only "ultimate employment decisions," such as terminations and demotions, "but also the entire spectrum of employment actions that are reasonably likely to materially and adversely affect an employee's job performance or opportunity for advancement in his or her career." *Id.* at 1053-54.

For instance, in *Patten v. Grant Joint Union High School District*, 134 Cal.App.4th 1378, 1381-83 (Cal. Ct. App. 2005), a school principal sued a school district for retaliation after being transferred from a large, underperforming middle school, to a smaller middle school with higher achieving students. The school district claimed the transfer did not constitute an adverse

employment action because plaintiff was still a principal, her wages, benefits and duties remained the same, and the transfer allowed her to use her skills in curriculum development. *Id.* at 1389. The court found that the transfer constituted a material adverse employment action because plaintiff was a young principal, with her entire career ahead of her, and the smaller, high achieving school presented her with less of an opportunity to distinguish herself. *Id.*

Similarly, Simpson contends she was subject to a material adverse employment action as retaliation for her harassment complaints when she did not receive stock options in 2004 and 2005.[4] Simonson Supp. Decl., Ex. 8 at 29; Simpson Decl., ¶ 33. Regarding the loss of stock options, Simpson states that "nearly" every year that she worked at Sun, she received stock options of "some sort." Simpson Decl., ¶ 32; Simonson Supp. Decl., Ex. 8 at 29. As to the loss of stock options in 2004, Simpson testified that she received stock options in 2004, but not in 2005. Simonson Supp. Decl., Ex. 8 at 29. Nevertheless, Simpson fails to offer any evidence that *Lytel* caused options to be withheld from her or that she was entitled to stock options in 2004 or 2005. Drawing all reasonable inferences in favor of Simpson, there is an insufficient nexus between her non-receipt of stock options and her complaints about Lytel to permit a reasonable jury to conclude that the non-receipt of stock options was a material adverse employment action. Accordingly, the Court will grant Lytel's motion for summary judgment as to the retaliation claim.

B.   Fifth Claim: Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress under California law, Simpson must show that: (1) Lytel engaged in extreme and outrageous conduct with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) Simpson actually suffered emotional distress; and (3) Lytel's outrageous conduct proximately caused her emotional distress. *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1150 (9th Cir. 1988). Lytel argues that Simpson cannot present evidence that Lytel engaged in the requisite

---

[4] During oral arguments at the hearing on April 28, 2006, Simpson admitted that the loss of stock options was the only incident of a possible material adverse employment action in retaliation to her harassment complaint.

extreme and outrageous conduct.

The Court concludes that a reasonable jury could find that Lytel's conduct was extreme and outrageous, that Simpson actually suffered from emotional distress, and that Lytel's conduct was the proximate cause of such emotional distress. In opposition to the instant motion, Simpson submitted the Declaration of Dr. Roberts ("Roberts Decl."). Dr. Roberts states that: (1) since January, 2002, he has treated Simpson; (2) Simpson called his office because of tiredness, insomnia, and crying; (3) Simpson said "her boss" was sexually harassing her; and (4) Simpson said her mother had Alzheimer's disease in 2002. Roberts Decl., ¶¶ 2-5. Lytel notes correctly that Dr. Roberts never identifies his specialty, his license information, the location of his practice, or the dates when he treated Simpson. Dr. Roberts does not state that Simpson's emotional distress — her crying, insomnia, and tiredness — was proximately caused by "her boss" (which could or could not have been Lytel), nor does he diagnose Simpson as suffering from emotional distress or any other psychological or physical condition related to Lytel's alleged harassment, or prescribe any medication to alleviate Simpson's symptoms. However, while these flaws in Simpson's evidence properly may be pointed out to a jury, they do not defeat Simpson's claim altogether. A jury could find that given the specific conduct alleged, Lytel's actions rise to the level of extreme and outrageous conduct, that Simpson suffered emotional distress, and that Lytel's actions were the cause of that emotional distress. Accordingly, the Court will deny Lytel's motion for summary judgment as to this claim.

C.     <u>Seventh, Eighth, and Ninth Claims: Assault, Battery, and Sexual Battery</u>

Finally, Simpson claims that Lytel's hugging, kissing, and touching of her breasts constitutes assault, battery, and sexual battery. Simpson Decl. ¶¶ 4, 31, 38-39; Simonson Decl., Ex. 1 at 191-92; Simonson Supp. Decl., Ex. 8 at 188. Lytel moves for summary judgment as to these claims, arguing that Simpson cannot meet the elements to establish assault, and that she consented to the hugs and never complained "about any fondling of her breasts." Mot. for Summary Judgment at 23.

Under California law, to make out a claim for assault Simpson must establish that: (1) Lytel intended to cause harmful or offensive contact, or the imminent apprehension of such

contact, and (2) she was put in imminent apprehension of such contact. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).

In California, civil battery requires that: (1) defendant touched plaintiff's person with the intent to harm or offend; (2) plaintiff did not consent to be touched; and (3) defendant's conduct harmed or offended plaintiff. *Fluharty v. Fluharty*, 59 Cal.App.4th 484, 497 (Cal Ct. App. 1997). "A harmful contact, intentionally done is the essence of a battery. A contact is 'unlawful' if it is unconsented to." *Ashcraft v. King*, 228 Cal.App.3d 604, 611 (Cal. Ct. App. 1991) (citation omitted).

A sexual battery claim "does not duplicate" a battery claim. *Angie M. v. Super. Ct.*, 37 Cal.App.4th 1217, 1225 (Cal. Ct. App. 1995). A person commits a sexual battery in California if he does any of the following:

(1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

(2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

(3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

Cal. Civ. Code § 1708.5(a). An "intimate part" includes "the breast of a female." *Id.* § 1708.5(d). "Offensive contact" is "contact that offends a reasonable sense of personal dignity." *Id.* § 1708.5(f).

A sexual battery claim under Section 1708.5 "requires the batterer intend to cause a 'harmful or offensive' contact and the batteree suffer a 'sexually offensive contact.'" *Angie M.*, 37 Cal.App.4th at 1225. Moreover, proof of sexual battery requires that plaintiff did not consent to the contact. *Lyons v. Williams*, 91 F.3d 1308, 1310-11 (9th Cir. 1996); *Angie M.*, 37 Cal.App.4th at 1225. For example, in *Jacqueline R. v. Household of Faith Family Church, Inc.*, 97 Cal.App.4th 198, 207-08 (Cal. Ct. App. 2002), Jacqueline challenged the trial court's finding that the sexual relationship was consensual. On appeal, however, the court found no evidence that Jacqueline found the touching offensive. *Id.* "[E]vidence Jacqueline resisted the pastor's

1  advances or, at times, told him to stop, was accompanied by her statements that she was afraid
2  they would be caught, not that she found his advances offensive or unwelcome." *Id.*  The court
3  concluded that "the trial court did not err by concluding the relationship was consensual." *Id.*
4      In the instant case, Simpson states that Lytel "hugged [her] many times inappropriately
5  and [she] repeatedly told him to stop it but he did not stop." Simpson Decl., ¶ 39.  As stated
6  above, Lytel claims that an e-mail indicates that the hugs were consensual, and Simpson
7  challenges the authenticity of this e-mail.  Regardless of whether the hugs were consensual or
8  not, the alleged incident in May, 2004, when Lytel grabbed Simpson's breasts without consent, is
9  sufficient evidence to preclude summary judgment as to Simpson's assault, battery, and sexual
10 battery claims.  Simonson Decl., Ex. 1 at 191-92; Simonson Supp. Decl., Ex. 8 at 188; Simpson
11 Decl., ¶¶ 4, 31.  Accordingly, Lytel's motion for summary judgment as to these claims will be
12 denied.

### IV.  ORDER

14     Good cause therefore appearing, IT IS HEREBY ORDERED Lytel's motion for summary
15 judgment is GRANTED IN PART and DENIED IN PART.

18 DATED: May 8, 2006

                                        JEREMY FOGEL
                                        United States District Court

Case No. C 05-01937 JF
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

1  This Order has been served upon the following persons:

2  Matthew A. Bisbee          mbisbee@ropers.com, pdunn@ropers.com

3  Koray J. Bulut             kbulut@wsgr.com, jbertolani@wsgr.com

4
5  Gary Michael Gansle        ggansle@wsgr.com, jbertolani@wsgr.com; kbulut@wsgr.com

6  Lindy Robin Gonzalez       lgonzalez@ropers.com, ghuerta@ropers.com

7  Eric C. Kastner            eck@kastnerbanchero.com, fh@kastnerbanchero.com

8  Ulrico S. Rosales          urosales@wsgr.com

9  Jeffrey Filon Ryan         jr@rslattorneys.com
10
11 John S. Simonson           jsimonson@ropers.com, pdunn@ropers.com; knguyen@ropers.com

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13

Case No. C 05-01937 JF
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)