United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   RICHARD LYTEL,                    )        Case No.: C 05-1937 JF (PVT)
                                       )
13                  Plaintiff,         )        **ORDER RE PLAINTIFF/COUNTER-**
                                       )        **DEFENDANT LYTEL'S  MOTION**
14         v.                          )        **FOR MENTAL EXAMINATION OF**
                                       )        **DEFENDANT/COUNTER-CLAIMANT**
15   JANET SIMPSON,                    )        **SIMPSON**
                                       )
16                  Defendant.         )
     _____ )
17                                     )
     AND RELATED CROSS-ACTION          )
18   _____ )

19         On July 18, 2006, the parties appeared before Magistrate Judge Patricia V. Trumbull for

20   hearing on Plaintiff/Counter-Defendant Lytel's ("Lytel") motion for mental examination of

21   Defendant/Counter-Claimant Simpson ("Simpson").[1]  Based on the briefs and arguments presented,

22         IT IS HEREBY ORDERED that Lytel's motion for an order permitting the mental

23   examination is GRANTED.

24   **I.     PROCEDURAL BACKGROUND**

25         In December 2000, dismissed Counter-Defendant Sun Microsystems, Inc. ("Sun") employed

26   Simpson as a Strategic Sales Development Representative in Dallas, Texas.  In August 2003, Sun

27

28         [1]      The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

United States District Court

For the Northern District of California

employed Lytel as the Vice President of the Advanced System Development Center ("ASD") in Menlo Park, California.  As Vice President, Lytel was responsible for three research and development projects, including the Life Sciences project.  Lytel and Simpson met during one of Simpson's business trips to the Menlo Park office in July 2003.  Simpson and Lytel discussed the possibility of Simpson joining Lytel's Life Sciences project.  After obtaining permission to create the position, Lytel offered Simpson a Program Manager position on the Life Sciences Project.  Simpson accepted the position and formally became Lytel's subordinate on September 19, 2003.  Simpson continued to work out of Dallas but traveled to Menlo Park and other locations as needed.

Simpson alleges that between August 2003 and May 2004, Lytel subjected her to sexual harassment.  Simpson filed a complaint with Sun's Human Resources Department, alleging that Lytel engaged in sexual harassment and retaliatory behavior.  The Human Resources Department found that Lytel had engaged in inappropriate conduct.  In April 2005, Simpson filed a claim with the California Department of Fair Employment and Housing against Lytel and Sun alleging sexual harassment and retaliation.

On May 10, 2005, Lytel commenced the instant action against Simpson.  In his complaint, Lytel alleges that Simpson falsely accused him of sexual harassment.  He seeks relief for two claims of Defamation, Intentional Interference of Prospective Economic Advantage, and Intentional Infliction of Emotional Distress ("IIED")[2].  Simpson responded with ten counterclaims against Lytel and Sun, including a claim of IIED stemming from the alleged sexual harassment and retaliatory behavior by Lytel.  On May 8, 2006, the District Court granted Lytel partial summary judgment with respect to Simpson's retaliation claim.  On May 22, 2006, Simpson dismissed all of her claims against Sun.

## II.   LEGAL STANDARD

### A.   STANDARD FOR MOTION TO ORDER MENTAL EXAMINATION

Federal Rule of Civil Procedure 35(a) ("Rule 35(a)") permits a court to compel a party to submit to a mental examination by a suitably licensed or certified examiner when that party's mental

---

[2]   As used herein, IIED refers to both Intentional and Negligent Infliction of Emotional Distress.

**United States District Court**

For the Northern District of California

1   condition is in controversy.  The order may be made only on motion for good cause shown, and

2   notice to the person to be examined and all parties, specifying time, place, manner, conditions, and

3   scope of the examination and the person or persons by whom it is to be made.  FED. R. CIV. P. 35(a).

4   The Supreme Court held that evaluating a Rule 35(a) motion "requires discriminating application by

5   the trial judge, who must decide, as an initial matter in every case, whether the party requesting a

6   mental...examination...has adequately demonstrated the existence of the Rule's requirements of 'in

7   controversy' and 'good cause.'"  *Schlagenhauf v. Holder*, 379 U.S. 104, 118-119 (1964).

8        **B.    POLICY CONCERNS AND RULE 35(a)**

9        Generally, "the deposition-discovery rules are to be accorded a broad and liberal treatment."

10  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).   The *Hickman* Court found that a policy favoring

11  liberal discovery facilitates proper litigation.  *Id*.  This policy is evidenced by Federal Rule of Civil

12  Procedure 26(b)(1) ("Rule 26(b)(1)"), which states that parties may obtain discovery of any matter,

13  not privileged, that is relevant to the claim or defense of any party.

14       In *Schlagenhauf*, the Supreme Court contrasted the lowered relevance standard of Rule

15  26(b)(1) with the standard prescribed by the text of Rule 35(a).  *See Schlagenhauf*, 379 U.S. at 117.

16  The *Schlagenhauf* Court observed that in addition to relevance, Rule 35(a) required that before a

17  court may order a mental or physical examination, the matter be "in controversy"and the moving

18  party demonstrate "good cause."  *Id*.  The Supreme Court reasoned that these two requirements

19  demonstrated a heightened standard that could not be met merely by the relevancy standard of Rule

20  26(b)(1).  *Id*. at 118.  Finally, the court concluded that the express limitations in Rule 35(a) were

21  designed to guard against "sweeping examinations of a party who has not affirmatively put into issue

22  his own mental or physical condition," and "to hold otherwise would mean that such examinations

23  could be ordered routinely." *Id*. at 121-122.

24       **C.    THE "IN CONTROVERSY" REQUIREMENT OF RULE 35(a)**

25       As previously stated, courts must determine whether the moving party affirmatively

26  demonstrates that the other party's mental condition "is really and genuinely in controversy."

27  *Schlagenhauf*, 379 U.S. at 118.  The District Court in *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.

28  Cal. 1995), conducted an extensive analysis of case law to determine whether a party's claim of

"emotional distress" is sufficient to place that party's mental state in controversy.  The *Turner* Court found that courts will order a mental examination where, in addition to emotional distress, cases involve one or more of the following: 1) a cause of action of IIED; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that her mental condition is "in controversy" within the meaning of Rule 35(a).  *Id*. at 95. In *Turner*, the court found that the weight of authority suggested that "garden-variety" emotional distress alone is not sufficient to place a party's mental state in controversy.  *Id*. at 97.  The court in *Turner* explained that Rule 35(a) was not meant to be applied in so broad a fashion as to allow courts to order a mental examination whenever a plaintiff claimed emotional distress.  *Id*. at 97.  Courts evaluating a Rule 35(a) motion also consider whether a party has alleged some type of *ongoing mental injury*.  *See, e.g., Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 221-22 (S.D.N.Y. 1994) (ongoing severe mental injury); *Duncan v. Upjohn*, 155 F.R.D. 23, 25 (D.Conn. 1994) (ongoing psychiatric harm); *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (ongoing mental illness).

## III.   DISCUSSION

### A.   SIMPSON'S MENTAL STATE IS "IN CONTROVERSY"

Lytel argues that a mental examination of Simpson is warranted in this case.  He contends that Simpson's claims of ongoing distress, coupled with conflicts from the written record regarding hospitalization and why she was prescribed antidepressants require such an examination.

In opposing this motion, Simpson argues that Lytel fails to meet the standards of a Rule 35(a) motion.  Simpson contends that Lytel does not meet the burden of the "in controversy" requirement, as she is claiming only garden-variety distress.  Moreover, Simpson argues that she will abandon any claim for ongoing distress.  She further contends that she does not intend to retain or designate an expert to examine her or testify about mental condition.

Lytel argues that he has sufficiently met the standards for a Rule 35(a) motion.  Lytel argues that Simpson has placed her mental state in controversy, as she is alleging a separate cause of action for IIED.  He further contends that, contrary to Simpson's position, she is alleging ongoing distress based on her First Amended Counterclaim ("FAC") and deposition testimony from her treating

1   physician.

2       A party's separate claim of IIED, in and of itself, sufficiently places that party's mental

3   condition "in controversy" so as to warrant a Rule 35 examination.  *See Turner*, 161 F.R.D. at 95;

4   *Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, (D. Conn. 2001).  Thus, the

5   examination is warranted based solely on Simpson's allegation of an IIED cause of action.

6       In addition, the record indicates Simpson has ongoing severe distress.[3]  Simpson's FAC[4],

7   dated June 30, 2006, alleges that Lytel's conduct caused her to suffer "severe emotional and physical

8   distress," and that she "suffered and continues to suffer" emotional distress.  Recent deposition

9   testimony from Simpson's treating physician indicates that she continues to suffer from depression,

10   as she has recently obtained a refill for her antidepressant medication.

11       The instant case is similar to *Gattegno*.  In that case, the defendant sought an order to compel

12   a mental examination of the plaintiff who alleged ongoing mental injury as a component of her

13   Discrimination and Retaliation claims and a separate cause of action for IIED.  *Gattengo*, 204 F.R.D.

14   at 229.  The plaintiff opposed the motion on the grounds that she asserts only "garden-variety"

15   distress and did not allege severe distress.  *Id*.  In an attempt to show that her mental state was not in

16   controversy, the plaintiff argued that she did not intend to support her emotional claims with medical

17   records or testimony of treating physicians or experts.  *Id*. at 232.  The *Gattengo* court found that the

18   plaintiff had adequately placed her mental condition in controversy by alleging a separate and

19   independent cause of action for IIED.  *Id*. at 231.  The court further found that the plaintiff's

20   allegations of ongoing distress, based on claims in her complaint and her discovery responses, were

21   enough to place her mental condition in controversy.  *Id*. at 232.

22       Turning to the present case, the court finds that Simpson has placed her mental state "in

23   

24       [3]    One rationale for denying requests for examinations where there is no ongoing emotional distress is that there is no *current* condition for the examiner to observe.  When all of the distress is truly in the past, there is little to be gained from an examination that cannot be obtained from the individual's

25   past medical records and a deposition of the doctors who treated the individual at the time.  On the other hand, where there is in fact continuing distress and only a strategic decision by an individual to place

26   a temporal limit on her claim of damages for such distress, the distress still exists and observation of the individual by a medical examiner does provide a level of information that is not available from prior

27   medical records and the deposition testimony from the treating physician.

28       [4]    An electronic copy of which Simpson again filed in the public record just yesterday, July 20, 2006.

United States District Court

For the Northern District of California

**United States District Court**

**For the Northern District of California**

controversy" within the meaning of Rule 35(a).  While Simpson argues that she is abandoning her claim for ongoing distress, the record indicates she is still actually experiencing distress.  To the extent that Simpson seeks to take her mental condition "out of controversy" by forgoing any claims of ongoing distress and forgoing expert testimony, Simpson's mental state is nonetheless "in controversy" as that term is used in Rule 35(a), because she has a cause of action for IIED.[5]  *See Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995).  None of the cases cited by Simpson in support of her opposition to the mental examination include a separate tort claim for IIED.  Thus, those cases are distinguishable.

### B.   GOOD CAUSE EXISTS TO PERMIT A MENTAL EXAMINATION

Having found that Simpson's mental state is "in controversy," this court accordingly finds that Lytel has adequately demonstrated "good cause" to order the examination.  Lytel claims that there are conflicts between the written record and physician testimony regarding the reason for Simpson's need for antidepressants.  As such, Lytel argues that a mental examination is necessary to evaluate Simpson.  The court agrees.  Moreover, denying this motion would deprive Lytel of a fair opportunity to defend against Simpson's claims of emotional distress in the event Simpson is later allowed to submit her treating physician's testimony, such as in rebuttal.

The *Schlagenhauf* Court instructed, "What may be good cause for one type of examination may not be so for another."  *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).  While mindful of the intrusive nature of a mental examination, the court finds Lytel has made a satisfactory showing of good cause to order the mental examination under the principles articulated in *Schlagenhauf*.[6]

### D.   THE EXAMINATION

Dr. James R. Missett will conduct the examination on Tuesday, August 1, 2006, beginning at 9:00 a.m.  Dr. Missett will carry out the examination at his office located at 1187 University Drive, Menlo Park, California, 94025.  Lytel failed to propose what specific psychological tests would be

---

[5]     It is conceivable that an instance may arise where a plaintiff has a claim for genuinely past IIED, under circumstances where a mental examination would not be warranted.  Since this is not such a case, it is unnecessary to reach that issue.

[6]     Nothing herein precludes Simpson from moving to exclude the information from the mental examination at trial.

1   administered by Dr. Berg, thus depriving Simpson of an opportunity to challenge them and depriving

2   the court of any ability to determine the necessity for the tests.  As such, no psychological tests will

3   be ordered.  The scope of the examination is limited to assessing the nature, cause and extent of

4   Simpson's emotional distress.  Both Simpson and Dr. Missett may audiotape the examination.  With

5   respect to expenses, Lytel is responsible for Simpson's reasonable lodging costs associated with

6   attending the mental examination.

7   Dated: *7/21/06*

8                                                           *Patricia V. Trumbull*
                                                      PATRICIA V. TRUMBULL
9                                                     United States Magistrate Judge

**United States District Court**

For the Northern District of California