** E-filed on 8/11/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RICHARD LYTEL,<br>Plaintiff,<br>v.<br>JANET SIMPSON,<br>Defendant. | Case Number C 05-1937 JF (PVT)<br><br>ORDER[1] DENYING SIMPSON'S MOTION FOR RECONSIDERATION<br><br>[re: docket no. 335] |
| AND RELATED CROSS-ACTION | |

Defendant/Counter-Plaintiff Janet Simpson ("Simpson") moves for reconsideration of the Court's order granting Plaintiff/Counter-Defendant Richard Lytel ("Lytel") summary judgment with respect to Simpson's second claim for relief—retaliation under California's Fair Employment and Housing Act ("FEHA"). In or about June 2004, Simpson filed a complaint with Sun's Human Resources Department ("HR") asserting that while working under Lytel's supervision she was the victim of sexual harassment and retaliation. An internal investigation was

[1] This disposition is not designated for publication and may not be cited.

conducted by Sun, during which time Simpson continued to report to Lytel. As a result of the investigation, Lytel departed from Sun in August 2004. Lytel filed a complaint in this Court on May 10, 2005, including claims for defamation, intentional interference with prospective economic advantage, and intentional infliction of emotional distress. On June 21, 2005, Simpson filed a counterclaim including six claims against Lytel: harassment and retaliation under the FEHA, infliction of emotional distress, assault, battery and sexual battery.[2] On May 8, 2006, the Court granted Lytel's motion for summary judgment as to Simpson's retaliation claim. On July 14, 2006 the Court granted Simpson's request to file the instant motion for reconsideration, which was filed July 24, 2006. Having considered the briefs, the applicable law, and the arguments of counsel at the hearing on August 11, 2006, the Court will deny the motion, without prejudice, for the reasons set forth below.

**DISCUSSION**

Simpson argues that newly discovered evidence, when considered under the standard for retaliation recently set forth by the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405 (2006), creates a triable issue of fact regarding her retaliation claim such that summary judgment on that claim is inappropriate. Lytel argues that the newly discovered evidence cited by Simpson lacks either the novelty or significance to impact the Court's earlier ruling. Lytel argues that California law has not changed as a result of *Burlington Northern*, and thus, Simpson's retaliation claim under the FEHA is unaffected by that decision. Although the applicability of *Burlington Northern* is the issue on which the instant motion ultimately turns, the Court first will consider whether Simpson has produced any new evidence of potential significance.

**A. Newly Discovered Evidence**

Simpson alleges that several emails containing new evidence of retaliatory conduct by Lytel were provided to her amidst 330 pages of documents on April 6, 2004, one day before her

---

[2] Simpson's counterclaim included additional claims against cross-defendant Sun. These claims were dismissed on May 22, 2006.

opposition to Lytel's motion to dismiss was due. These emails, Simpson argues, support an inference that Lytel attempted to downgrade Simpson's performance rating and then attempted to have Simpson terminated after learning that she had filed, or was about to file, a complaint about Lytel to HR. Simpson argues that given the short time-frame and the large volume of other documents that had recently been provided by Sun, she had no reasonable opportunity to incorporate the emails into her opposition brief.

Simpson cites one newly discovered email as evidence that Lytel was aware of Simpson's potential complaint. In an email sent to Lytel just past midnight on July 12, 2004, Jeanne Galipeaux quotes an earlier message in which Lytel wrote:

> [Simpson has] asked a close friend of mine (she didn't know the friend was even a friend) about 'taking me to HR' for some reason. I think she may be ready to jump ship on us, maybe looking to blame me for something. I don't know and I'm losing interest in helping her when she keeps pissing off my collaborators (the list is very long now).

Ryan Decl., Ex. C. Lytel argues that this email is irrelevant to the instant motion, that it does not show that Lytel *knew* that Simpson would file a complaint, and that Simpson did not officially file until July 16, 2004.[3] Nonetheless, the email would allow a jury to infer that by July 12, 2004, Lytel was aware of a pending complaint by Simpson. Knowledge that a complaint actually has been filed is not necessary to show retaliation. *See Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 815 (1999) (""[A]n employee engages in protected activity under the FEHA when he *threatens* to file a charge of employment discrimination.") (emphasis added).

Based on another newly discovered email, Simpson argues that Lytel tried to lower her performance rating the same day, writing, "Please change Jan Simpson to a 2. She was recently promoted and is not a 1. She may have her rating further altered next week when we review these w/Greg and staff." Declaration of Jeffrey F. Ryan, Ex. C. Lytel argues that '2' "was the highest rating a newly promoted employee could receive in 2004, per Sun's applicable policy at the time. However, the meaning of "category" leaves it unclear whether Lytel could have provided a higher

---

[3] Lytel argues that the email refers only to Simpson's conversation with Mary Van Leer, which, as described in Simpson's sealed deposition testimony did not include a definitive statement by Simpson that Simpson would file a complaint.

numeric rating and Lytel's brief points to no documentation of the relevant policy. Additionally, if a '2' was the most favorable rating allowed, Lytel's remark that "[s]he may have her rating further altered next week," indicates that Simpson's rating might be changed to her detriment.

In addition, Simpson cites several emails sent in August 2004 by Lytel to Cheryl DeBorja in which he complains of "a performance issue–and non-compliance by Jan with my repeated requests," states that she "nearly wrecked" his "one and only project with my alliance," and—after being informed of the investigation HR into Simpson's complaints—writes that "Simpson has done essentially no work for me since I promoted her in early May," that she had "been caught in several deceptions" and that her behavior included "multiple transgressions against me and my colleagues." Ryan Decl., Exs. C, E.[4] Simpson notes that the negative statements in these messages contrast sharply with several positive statements about Simpson from Lytel and others made from early May 2004 through late July 2004. *See* Simpson Decl., Ex. A.

Lytel argues that Simpson's new evidence is not new at all because Sun's Investigation Report, produced to Simpson by Sun in November 2005 as part of initial disclosures, contains references that Lytel "was trying to terminate [Simpson's] employment" and "aggressively pursued his view that [Simpson] should be fired." *See* Docket no. 226 (filed under seal). Lytel also argues that the new emails "are no different in content then [sic] the scores of e-mail documents provided by Simpson" in opposition to Lytel's earlier summary judgment motion.

Although previously produced emails do include complaints about Simpson's performance, the email messages produced April 6 appear to be more negative regarding Simpson's performance, with talk of "wrecking", "non-compliance", and doing "no work." Lytel's request that Simpson's performance rating be changed from '1' to '2' indicates more clearly than previous emails that Lytel sought to affect the terms and conditions of her employment. Finally, the cumulative impact of the content and timing of the emails, including

[4] Lytel also argues that the August 24, 2004 email was provided to Sun as part of its investigation and that "it cannot be considered retaliation for Lytel to provide requested information to Sun." However, it is not clear that the negative comments about Simpson in this email were made in response to Sun requests.

those provided April 6, might lead to a reasonable inference by a jury that Lytel was trying to strike back at Simpson—and as Simpson points out the significance of such conduct might increase under the *Burlington Northern* standard. There is no evidence, however, newly discovered or otherwise, that shows that Lytel actually succeeded in his attempts to cause material harm to Simpson's employment status at Sun.

**B. *Burlington Northern***

1. The Standard Set Forth in the *Burlington Northern* Decision

*Burlington Northern* held that in order for an action to constitute retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 S.Ct. at 2415 (citations omitted). While "petty slights or minor annoyances" are not actionable simply because an employee has reported discrimination," *id*. at 2415, "[t]he significance of any given act of retaliation will often depend on the circumstances," with its social impact "depending on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id*. at 2415. Potentially retaliatory conduct must be considered in context. "[A]n 'act that would be immaterial in some situations is material in others.'" *Id*. at 2416.

In *Burlington Northern*, a female forklift operator was reassigned to a less desirable job as a track laborer and was suspended for thirty-seven days, although she later was reinstated with back pay. The Court ruled that either the reassignment or the suspension could be found to constitute a materially adverse action given the particular circumstances of the employee. *Id*. at 2416-17.

2. The California Standard for Retaliation under the FEHA

The California Supreme Court has held, prior to *Burlington Northern*, that a retaliation claim under FEHA requires an adverse employment action that "materially affect[s] the terms and

conditions of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1051 (2005).[5] The "materiality" test encompasses not only ultimate employment decisions, "but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Yanowitz*, 36 Cal.4th at 1054. "[T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries." *Id*. at 1055. Retaliation may take the form of a course of conduct. *Id*. at 1056.

> Retaliation claims are inherently fact specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.

*Yanowitz*, 36 Cal.4th at 1052.

In *Yanowitz*, supervisors solicited negative information about a previously highly regarded employee with eighteen years of service after she refused to carry out a discriminatory policy. The supervisors criticized the employee in front of subordinates and in written memoranda, issued restrictive directives to her, and impaired her effectiveness with her staff. Although she was not terminated, the employee was faced with an implied threat of termination including remarks that her conduct might end her career. The California Supreme Court held that the course of conduct engaged in by management amounted to retaliation for the employee's refusal to follow discriminatory directives. *Id*. at 1059-1061.

Simpson's brief does not argue that the new evidence cited would succeed in defeating summary judgment as to the retaliation claim under *Yanowitz* standard, applied in the Court's earlier ruling; Simpson argues only that the evidence is sufficient to create a material issue of fact

---

[5] California Government Code § 12940(h) "forbids employers from retaliating against employees who have acted to protect the rights afforded by" FEHA. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1051 (2005). Section 12940(h) provides that it is unlawful "[f]or any employer, . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h).

for the jury under the *Burlington* standard.[6] Accordingly, the Court does not consider this question.

3. Impact of *Burlington Northern* on the Retaliation under the FEHA

"California courts often look to Title VII in interpreting the FEHA," though "[o]nly when FEHA provisions are similar to those in Title VII." *State Dept. of Health Services v. Superior Court*, 31 Cal.4th 1026, 1040 (2003); *see also Pinero v. Specialty Restaurants Corp.*, 130 Cal.App.4th 635, 640, n.2 (2005). As Simpson points out, in *Yanowitz* the California Supreme Court looked to federal Title VII decisions when considering the legislative intent behind FEHA's retaliation provisions. *See Yanowitz*, 36 Cal.4th 1028, 1043, 1049-55. The *Yanowitz* court declined "to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination" under California law, *id*. at 1050, noting the agreement between this approach and the Fourth Circuit's now-abrogated approach in *Von Gunten v. Maryland* (4th Cir. 2001) 243 F.3d 858, 863, *abrogated by Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006).

California courts have typically construed FEHA to offer greater protection than Title VII. Given that the *Von Gunten* standard for materiality has been rejected by the Supreme Court, it is entirely possible that California may adopt the *Burlington Northern* standard for retaliation in the near future. However, California has not revisited the standard for "adverse employment action" in the context of retaliation since the Supreme Court's recent decision in *Burlington Northern*. Until California sees fit to change the standard, this Court must apply California law as articulated in *Yanowitz*.

The Court tends to agree with Simpson that the outcome might be different were California to adopt the *Burlington Northern* test. The prospect of attempts by a supervisor to terminate or lower the performance rating of an employee "might have dissuaded a reasonable

---

[6] Simpson concedes that "under the then applicable standard [for retaliation], evidence of *attempts* to terminate, without tangible job loss, would likely not have been held sufficient," and states that "without the change in the applicable law from the "materiality" standard to the "deterrence" standard, the newly discovered evidence would not likely change the outcome. Motion for Reconsideration, p. 5, n.2; Reply, p. 2.

worker from making or supporting a charge of discrimination." *Cf. Burlington Northern* 126 S.Ct. at 2415. Considering Lytel's alleged conduct in the context of the instant case, the Court notes that there is evidence in the record that Simpson was concerned about possible repercussions on her career were she to file a complaint. For instance, Simpson's conversation with Van Leer and her call to Sun's "SunDial" HR hotline support an inference that Simpson was worried about career repercussions. *See* Deposition of Janet Simpson, p. 446-47, Amended Declaration of Janet Simpson in Support of Her Motion for Summary Judgment, ¶ 22, Ex. Z.

Accordingly, the motion will be denied without prejudice. Should California courts revisit the retaliation issue and adopt the *Burlington Northern* standard prior to trial, the Court will consider the matter again.

**ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that the Simpson's motion for reconsideration is DENIED without prejudice.

DATED: August 11, 2006

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Counsel for Plaintiff

eck@kastnerbanchero.com
mbisbee@ropers.com
jsimonson@ropers.com
lgonzalez@ropers.com

Counsel for Defendant

jr@rslattorneys.com

Counsel for Cross-Defendant

urosales@wsgr.com
ggansle@wsgr.com
kbulut@wsgr.com