**E-Filed 10/18/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| RICHARD LYTEL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JANET SIMPSON,<br><br>　　　　Defendant. | Case Number C 05-1937 JF (PVT)<br><br>ORDER RE MOTIONS IN LIMINE |

On October 6, 2006, the Court heard argument regarding the parties' motions in limine ("MIL"). The Court ruled on the majority of the motions from the bench, but granted the parties an opportunity to provide supplemental briefing with respect to certain of the motions. The parties have provided supplemental briefing with respect to Lytel's MIL 5 and Simpson's MIL 3 and 11. Lytel also has filed new MIL 9 and 10.

**Lytel's MIL 5: To Exclude Testimony By Simpson Of Lytel's Alleged Fabrication Of And Tampering With E-Mail Communications And Lytel's Alleged Improper Access To Sun's Computers And Accounts.**

Simpson asserts that Lytel logged on to her e-mail and fabricated or altered her e-mails, specifically the "I love hugs" e-mails. Lytel moves to exclude testimony of this alleged fabrication or tampering by Lytel.

1   At the hearing, the Court ruled that Simpson may testify that she did not receive or create
2   certain e-mails; that she may present evidence of access to her e-mail password by Lytel's
3   assistant, Jeanne Galipeaux; and that she may ask the jury to draw an inference of tampering
4   based upon this evidence.  Lytel has submitted supplemental briefing arguing that Simpson
5   should not be permitted to use the testimony of Sun employee Eric Robison or the declaration of
6   Sun attorney Koray Bulut to support her claim of tampering.  Following Simpson's internal
7   complaint regarding Lytel, Sun assigned Robison to search for e-mails between Lytel and
8   Simpson.  Robison testified that he assigned the task to the IT operations group, and that once all
9   e-mails between Lytel and Simpson had been recovered, he created a subset of emails based upon
10  search terms provided by either Sun's legal department of human resources department.  Robison
11  Depo., 11:4 - 12:5.  Robison turned over that subset of emails to Sun's attorneys.  *Id.* at 11:18-23.
12  Robison does not remember who gave him the search terms, what the search terms were, or the
13  date parameters of the search, and in general Sun does not keep written record of such searches
14  for reasons of privacy.  *Id.* at 14:13-15; 35:10 - 37:2.  Robison does remember that some of
15  Simpson's e-mails could not be restored because of corruption or lack of backups.  *Id.* at 41:3-21.

16  Simpson wishes to present Robison's deposition testimony and Bulut's declaration to
17  demonstrate that the search results turned over by Robison to Bulut did not contain the
18  controversial "I love hugs" e-mail that Lytel claims was sent to him by Simpson.  Lytel argues
19  that because Robison cannot remember the search parameters, and because some of Simpson's e-
20  mails were not recoverable, evidence that the search results did not contain the "I love hugs" e-
21  mail is insufficient to prove that the e-mail never existed.  Lytel argues that permitting this
22  evidence would confuse the jury.  Lytel further argues that it would be unfair to permit Simpson
23  to use Bulut's declaration, because Lytel has not been able to depose Bulut in light of Bulut's
24  continued representation of Sun in active litigation against Lytel.

25  Lytel's objections to Robison's testimony go to the weight of the testimony rather than its
26  admissibility.  Lytel may argue at trial that Robison's testimony is insufficient to establish that
27  the "I love hugs" e-mail did not exist; however, Simpson may point to the absence of the "I love
28  hugs" e-mail from the search results as one piece of evidence to be considered in determining the

1  existence or non-existence of that e-mail.

2  The Court will, however, exclude the declaration of Bulut in light of his role as Sun's
3  counsel and Lytel's inability to cross-examine him.

4  Lytel also seeks to preclude Simpson from presenting the testimony of computer expert,
5  Eugene Schultz. Lytel has filed a separate motion to exclude Schultz's testimony, addressed
6  below.

**Lytel's New MIL 9: To Exclude Testimony Of Dr. Martin Blinder, Dr. Bruce Roberts And Janet Simpson.**

Dr. Martin Blinder is Simpson's retained psychiatric expert witness. In formulating an opinion regarding Simpson's mental state, it appears that Blinder has considered a telephone conversation he had with Simpson's treating physician, Dr. Bruce Roberts, on October 4, 2006. Lytel contends that Roberts' alleged statements to Blinder during that conversation are completely contradictory to Roberts' prior deposition testimony, and requests that Blinder be precluded from referencing or relying on the Roberts conversation on the grounds that the caller may not have been Roberts and that the statements made during the conversation are hearsay. With respect to the identity of the caller, Blinder testified that his caller ID read "Bruce Roberts" when the call came in, and has offered to provide his telephone bill demonstrating that the call came from Roberts.

A much more difficult question is presented by the alleged substance of the telephone call, however. Roberts testified that he prescribed Wellbutrin to Simpson in December 2003 because she was having difficulty dealing with her mother's Alzheimer's disease, and that Simpson did not mention Lytel's harassment until several months later in March 2004. However, during the subject telephone call Roberts allegedly told Blinder that he prescribed the Wellbutrin because Simpson was having emotional symptoms as a result of Lytel's harassment. These statements appear to be directly contradictory. Given the hearsay nature of Roberts' alleged statements during the telephone call, and the fact that those alleged statements are directly contradicted by his deposition testimony, the Court concludes that it would be inappropriate to permit Blinder to rely upon the alleged statements under Federal Rule of

3

Evidence 703. Simpson correctly points out that a medical expert may rely upon inadmissible evidence in formulating an opinion if such evidence is of a type reasonably relied upon by an expert in the field, and cites case authority for the proposition that a doctor may testify based in part upon the reports of other doctors. This authority is inapposite; Blinder does *not* propose to testify based upon a report or deposition testimony or other verifiable opinion of Roberts, but rather based upon a telephone conversation that appears to be directly contradictory to Roberts' previous testimony.

Even if Blinder's reliance upon the October telephone call were appropriate under Rule 703, the Court concludes that such reliance would be fundamentally unfair to Lytel and thus, because the probative value of Roberts' alleged statements is greatly outweighed by the prejudice to Lytel, subject to exclusion under Rule 403. Because the proffered evidence has come to light only days before trial, Lytel has not had an opportunity to test Roberts' alleged revised version of events. Under these circumstances, the Court will preclude Blinder from offering testimony or opinion based upon the October 4 telephone call with Roberts.

It is not clear whether Roberts will testify at trial. Lytel seeks to limit the substance of Roberts' trial testimony to that of Roberts' deposition testimony. If Roberts in fact offers trial testimony that is contradicted by his deposition testimony, Lytel may of course use the deposition testimony for impeachment. However, a broad pretrial order restricting Roberts' trial testimony is unwarranted.

In the event the Court does not impose the requested restriction on Roberts' trial testimony, Lytel seeks to re-depose Roberts and also to depose Simpson as to communications she and her attorneys may have had with Roberts after the conclusion of his deposition. The Court will deny this request. If Roberts testifies, Lytel will have the opportunity to cross-examine him and, if warranted, to use his deposition testimony for purposes of impeachment.

Lytel requests that Blinder be precluded from opining that Lytel is in denial, is bi-polar or is suffering from depression, because Blinder has not examined Lytel and such medical opinion would be unsupported by Lytel's records. Based upon the record before it the Court cannot conclude that such an opinion by Blinder would be unsupported. Blinder has examined Lytel's

Case No. C 05-1937 JF (PVT)
ORDER RE MOTIONS IN LIMINE
(JFLC2)

medical records and has reviewed the videotaped deposition of Lytel. These materials may be sufficient to lay a foundation for Blinder's opinion. The Court's denial of Lytel's motion in this respect is without prejudice to appropriate objection at trial.

Finally, Lytel requests that Simpson, Blinder and Simpson's other witnesses be precluded from stating that Lytel took punitive action against other subordinates. This request is denied.

**Lytel's New MIL 10: To Exclude Simpson's Rebuttal Expert Computer Witness Mr. Eugene Schultz.**

Simpson did not disclose Schultz as an expert in connection with her tampering claim. However, after the Court ruled that Lytel may attempt to rebut Simpson's tampering theory with the testimony of Lytel's expert, David Townsend, Simpson disclosed Schultz as a rebuttal expert. Lytel argues that this disclosure of "rebuttal to a rebuttal witness" is improper. Simpson argues that, while Townsend was disclosed to address evidence in support of her tampering theory, he is not a rebuttal expert because Simpson did not disclose a computer expert. Simpson argues that Townsend thus must be considered an "expert," and that she is entitled to disclose a "rebuttal expert" to address his opinions. While the Court understands Lytel's view that Simpson is performing an end run around the expert disclosure requirements, Simpson is correct that Townsend is an "expert" rather than a "rebuttal expert." Moreover, the Court is not persuaded that it would be unfair to permit Schultz to offer opinion in response to Lytel's computer expert. Accordingly, this motion is denied.

**Simpson's MIL 3: To Exclude Evidence Relating To Simpson's Settlement With Sun And The Fact That Sun Was A Party To This Action.**

Simpson moves to exclude evidence that Sun was a party to the action and that Simpson settled with Sun. Lytel argues that disclosure of Sun's status as a party and the existence of the settlement is necessary to give the jury an accurate picture of events. The Court granted this motion on the record at the hearing on October 6. Lytel has not provided a basis for reconsideration.

5

Case No. C 05-1937 JF (PVT)
ORDER RE MOTIONS IN LIMINE
(JFLC2)


**Simpson's MIL 11:  To Exclude Evidence, Argument Or Testimony Regarding Claimed Economic Loss By Lytel Arising Out Of His Resignation From Employment With Sun Or In The Alternative To Stay Trial Of Lytel's Claims Until The Conclusion Of His State Court Action Against Sun Or In The Alternative To Bifurcate This Trial.**

Lytel is pursuing a state court action against Sun arising out of his resignation.  Simpson argues that any evidence of economic loss arising out of his resignation therefore should be excluded.  Alternatively, Simpson argues that trial of Lytel's claims should be stayed pending resolution of the state court action or that this trial should be bifurcated with respect to Lytel's claim of economic loss.  Simpson does not, however, cite any authority for the proposition that the state court action somehow has priority and must be resolved first.  Moreover, a state court determination that Sun is liable to Lytel would not exonerate Simpson.  Evidence of Lytel's economic loss is an essential element of his claim of intentional interference.

In her supplemental brief, Simpson argues that Lytel actually is attempting to recover damages caused by Simpson's counterclaim, and that such damages are barred by California's litigation privilege.  Obviously, Lytel will have the burden at trial to demonstrate the existence of damage in connection with his claims.  The Court cannot, based upon the record before it at this time, opine as to whether Lytel will be able to make this showing.

Simpson also argues that if Lytel "opens the door" by claiming economic damages from Simpson arising out of his termination by Sun, Simpson should be able to offer the conclusions contained in the Sun Investigative Report to show the true reasons for Lytel's termination.  The Court previously has ruled that the conclusions in the Sun Investigative Report are not admissible under the business records exception to the hearsay rule.  The Court has not ruled whether those conclusions may be admissible to demonstrate Sun's state of mind.  The Court need not make such a ruling unless and until Lytel puts Sun's state of mind at issue.

IT IS SO ORDERED.

DATED: 10/18/06

_____
JEREMY FOGEL
United States District Judge

6

Case No. C 05-1937 JF (PVT)
ORDER RE MOTIONS IN LIMINE
(JFLC2)

This Order was served on the following persons:

Matthew A. Bisbee     mbisbee@ropers.com, pdunn@ropers.com

Koray J. Bulut     kbulut@wsgr.com, jbertolani@wsgr.com

Gary Michael Gansle     ggansle@wsgr.com, jbertolani@wsgr.com; kbulut@wsgr.com

Lindy Robin Gonzalez     lgonzalez@ropers.com, ghuerta@ropers.com

Eric C. Kastner     eck@kastnerbanchero.com, fh@kastnerbanchero.com

Ulrico S. Rosales     urosales@wsgr.com, jbaca@wsgr.com

Jeffrey Filon Ryan     jr@rslattorneys.com

John S. Simonson     jsimonson@ropers.com, pdunn@ropers.com; knguyen@ropers.com